No. 45,986

Faye Schrader, *Appellee*, v. Gerald Anson Schrader, *Appellant*.

(484 P. 2d 1007)

Opinion filed May 15, 1971.

*Eugene C. Riling*, of Lawrence, argued the cause and was on the brief for the appellant.

*Kermit M. Beal*, of Lawrence, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: The appeal in this case stems from a judgment dismissing a divorce action at the conclusion of a full-dress trial. The defendant husband has appealed.

Mr. and Mrs. Schrader were legally married on December 10, 1960. Domestic felicity did not long remain placid, and dissolution of the troubled union was judicially decreed on June 6, 1966. At this time the mother was awarded custody of her two small children, a boy two years of age, and a baby girl just six months old. Child support, to be paid by the father, was set at $75 per month and $1200 alimony was awarded to Mrs. Schrader.

This separation, however, was not destined to be permanent. Sometime in November, 1966, the Schraders again began living together, this time without bothering about anything so trivial as legal formalities. From the record we may surmise that throughout the ensuing two years of cohabitation the Schraders publicly dis-

played at least some of the characteristics normally appertaining to more formally married couples.

However, the personal behavior of the two partners, both in relation to each other and outside the normal marital domain, as well, can scarcely be said to have been designed for the purpose of instilling mutual trust and confidence. Indeed, there is little in the record reflecting favorably on the moral habits and customs of either partner. As a result of continuing conjugal turbulence, Mrs. Schrader, on September 16, 1968, filed this action for a second divorce, alleging the existence of a common-law marriage and praying that she be released from the onerous bonds which shackled her to her ostensible husband.

In due course of time, Mr. Schrader responded with a cross petition, denying fault on his part and pointing a finger of guilt and shame at his purported spouse. Ultimately the case was tried before the Honorable Frank R. Gray, who concluded that no common-law marriage had been established. As we have heretofore said, Judge Gray dismissed the lawsuit. Costs were assessed against Mr. Schrader and he brings this appeal.

According to his statement of points, the defendant contends the trial court erred in three particulars: First, in finding that no common-law relationship existed; second, in failing to grant defendant a divorce on his cross petition; and third, in awarding custody of the minor children to the plaintiff.

In a long line of cases, this court has recognized the validity of common-law marriages, and has outlined the prerequisites for the creation of common-law relationships. (*Renfrow v. Renfrow*, 60 Kan. 277, 56 Pac. 534; *Smith v. Smith*, 161 Kan. 1, 165 P. 2d 593; *In re Estate of Freeman*, 171 Kan. 211, 231 P. 2d 261.)

In *Sullivan v. Sullivan*, 196 Kan. 705, 413 P. 2d 988, Justice O'Connor pointed out the elements basic to the common-law concept of marriage as being: First, a capacity to marry; second, a present marriage agreement; third, a holding out of each other as husband and wife to the public. (See, also, *Gillaspie v. Blair Construction Co.*, 192 Kan. 455, 388 P. 2d 647.)

With this brief legal recitation, we turn to defendant's first point: Did the trial court err in finding that no common-law relationship existed? In our judgment this question must be accorded a negative answer. The pivotal finding made by the trial court is found in the following sentence of its Memorandum of Decision:

"Although the parties cohabited, made joint income tax returns and generally acted as man and wife from November, 1966 to September, 1968 there was never a *present agreement or understanding that they were married.* . . ." (Emphasis supplied.)

In support of this finding the trial court quoted in its memorandum certain testimony given by Mrs. Schrader in response to questions propounded by the court:

"Q. Mrs. Schrader, let me ask you the same question I asked your husband. Why didn't you get married when you went back together legally?

"A. I was afraid to. I wanted to try for the kids' sake, but I didn't feel sure enough to turn around and absolutely remarry. I thought if we couldn't work it out we wouldn't have to go through everything all over again.

"Q. So actually you didn't feel you were married, you figured you had an out as long as you were not legally married again?

"A. Yes sir, I suppose so."

Corroborating the testimony of his quondam wife, the defendant himself, replying to a question put to him by the court, said:

"She [Mrs. Schrader] didn't want to get married again, and the deal was we would go back together and if we could make it we would get married, but she would not get married, and I loved my kids and I went back to her."

The conclusion reached by the trial court that "the parties did not consummate a common law marriage after the divorce of June, 1966" appears to be amply supported by the record. Our invariable rule, repeated to the point of its becoming threadbare, is to the effect that findings made by the trial court will not be overturned on appeal where they are supported by substantial competent evidence. (See cases in 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 507.)

Is it true there was evidence the parties did live together, held themselves out as man and wife, filed joint income returns, bought personal property as man and wife, and registered themselves in hotels in that capacity. This evidence was admissible as tending to establish a common-law relationship between the Schraders, and, standing alone, these circumstances might well have sufficed to warrant an inference that a consensual marriage had indeed been consummated. (*Jacoby v. Jacoby*, 132 Kan. 77, 294 Pac. 857; *Cain v. Cain*, 160 Kan. 672, 165 P. 2d 221; *Gillaspie v. Blair*, supra.)

Our law, however, is very clear that an indispensable constituent of a common-law marriage is the existence of a present marriage agreement. (*Whetstone v. Whetstone*, 178 Kan. 595, 290 P. 2d 1022.) In *Pitney v. Pitney*, 151 Kan. 848, 101 P. 2d 933, our court

had this to say, in analyzing its prior decisions in which common-law marriages had been upheld:

". . . In each of them a mutual present consent to the marriage was regarded as being essential to the establishment of such a marriage. (Citing cases." (p. 853.)

The testimony of both Mr. and Mrs. Schrader negates this prime requisite of a common-law marriage—that is, a present existing agreement between them.

What we have so far said will dispose not only of the defendant's first claim of error, but his second contention as well, *i. e.,* that a divorce should have been awarded on his cross petition. The trial court came to the conclusion, on what we have said was sufficient evidence, that there had been no second or consensual marriage. Hence, there were no marital ties to be severed by a divorce.

Mr. Schrader's final complaint revolves around the trial court's failure to change the custody of the children from their mother. It is true that K. S. A. 60-1606 provides substantially, in part, that even though a decree of divorce be denied, the court may make provision for the custody and support of minor children. Hence, the court could have entered a custody order in this case had it believed there was any occasion to do so.

It is obvious the court believed no change of custody was justified at the time—and particularly a change to the defendant. In its memorandum opinion the court observed that were the hearing to be treated as a motion to change custody in the old divorce case that "the evidence would not have warranted a change of custody to defendant and although plaintiff's conduct bordered on unfitness in the early months of her cohabiting with defendant after the divorce, her more recent behavior would not have warranted taking the children from her."

It cannot be gainsaid that the record reveals evidence of some sexual aberrations on the part of Mrs. Schrader. But, however much her deviations may have offended against social convention, we cannot say the court abused its discretion in permitting custody to remain, for the time being at least, in the plaintiff. Not only are exculpatory factors suggested in the record, but the trial court had the immense advantage of hearing and observing the principal participants in person. It thus occupied a far superior position than do we in arriving at a judicious and studied appraisement of the situation. (*Finney v. Finney,* 201 Kan. 263, 440 P. 2d 608.)

In closing we would observe that a legal forum is still available to

these parents for the litigation of matters pertaining to the custody of their unfortunate youngsters. The facilities of the Douglas County District Court can be summoned into play through the medium of the first divorce action whenever the welfare of the children requires that further consideration be given to their custody.

The judgment of the court below is affirmed.