559 P.2d 1085

MISSION INSURANCE COMPANY, Insurer of City Van & Storage Company, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Gertrude E. Thrash, widow of Willie C. Thrash, Deceased, Respondent Employee.

No. 1 CA–IC 1483.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 21, 1976.

Jones, Teilborg, Sanders, Haga & Parks, P.C. by William R. Jones, Jr., Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

Price, Tinney, Lindberg & Gianas by William H. Tinney, Tucson, for respondent employee.

HAIRE, Chief Judge.

The sole issue for determination on this appeal is the correctness of the hearing officer's decision that the claimant was the lawful wife of decedent employee at the time of his death in an industrially related accident.

Claimant, Gertrude E. Thrash, and the employee Willie C. Thrash cohabited as husband and wife in Kansas from 1969 until November of 1974, at which time they moved to Tucson, Arizona, where they continued to live together until the industrial accident which caused Mr. Thrash's death. Although both Mr. Thrash and claimant were married to other persons when they first began to live together, both had obtained divorces by October of 1972.

Claimant testified that after they were both divorced from their prior spouses she and Thrash continued to live together and "felt that they were married just the same as anybody else, except we didn't have a piece of paper to show for it." She also testified that they planned that when Mr. Thrash's work as a truck driver should take him to Las Vegas they would get married there, just "to have a piece of paper to prove it to other people." No such marriage ever took place. It is undisputed that claimant and Mr. Thrash held themselves out to the public both in Kansas and in Arizona as husband and wife, travelled together as husband and wife, filed tax returns jointly as husband and wife and signed documents as Mr. and Mrs. Thrash. No evidence was presented that either ever denied that they were married or represented in any way, privately or publicly, that they were not married to each other.

Although Arizona does not recognize common law marriages contracted here, A.R.S. § 25–111,[1] under A.R.S. § 25–112A[2] claimant's marriage to decedent would be valid under Arizona law if her marriage was valid according to the law of Kansas. *Roy v. Industrial Commission*, 97 Ariz. 98, 397 P.2d 211 (1964).

Kansas does recognize common law marriage if three basic elements are shown to exist:

"The validity of common-law marriages has long been recognized in this state. The basic elements essential in establishing the existence of such marriage relationship are: (1) capacity of the parties to marry, (2) a present marriage agreement, and (3) a holding out of each other as husband and wife to the public." *Sulli-*

1. A.R.S. § 25–111 reads as follows:
"A. A marriage may not be contracted by agreement without a marriage ceremony.
"B. A marriage contracted within this state is not valid unless:
1. A license is issued as provided in this title, and
2. The marriage is solemnized by a person authorized by law to solemnize marriages, or by a person purporting to act in such capacity and believed in good faith by at least one of the parties to be so authorized.

2. A.R.S. § 25–112 reads in part as follows:
"A. Marriages valid by the laws of the place where contracted are valid in this state."

*van v. Sullivan*, 196 Kan. 705, 413 P.2d 988, 992 (1966).

On this appeal, petitioning insurance company does not dispute the existence of element (1) that the parties had capacity (after October of 1972) to marry, or (3) that they held each other out to the public as husband and wife, but does claim that the evidence is inadequate to support the hearing officer's finding that the claimant and decedent fulfilled the requirement of having a present marriage agreement between them.

Petitioner points to Kansas cases which hold that the presence of such an agreement is an indispensable element of a common law marriage. *Schrader v. Schrader*, 207 Kan. 349, 484 P.2d 1007 (1971); *Sullivan v. Sullivan, supra.*

While it is true, as petitioner contends, that in both of these cases the Kansas courts found that no marriage agreement existed between the parties, in both of these cases there was explicit testimony that one or both of the parties had expressly refused to agree to be married. In the *Schrader* case, principally relied on by petitioner, the trial court had found that this type of testimony negated the inference, which otherwise would obtain from the circumstances of public holding out as husband and wife, that a consensual marriage had been effected. *Schrader v. Schrader, supra*, 484 P.2d at 1009. In the *Sullivan* case similarly, there was evidence before the trial court that the alleged husband had denied that he and the petitioner were married, that she had continued to use her maiden name, and that there were other circumstances which tended to negate both the element of holding out to the public as husband and wife and that of the existence of a present agreement to be married.

In both *Schrader* and *Sullivan* the reviewing court upheld the trial court's finding that the inference usually to be drawn from evidence of cohabitation had been negated by other evidence. Neither case is dispositive of the issue here, where the hearing officer as trier of fact believed Mrs. Thrash's testimony that an agreement to be married did exist, and found no negating evidence.

Petitioner, however, relies on two circumstances to rebut Mrs. Thrash's testimony: 1) that she could not localize the agreement as to a specific conversation at a specific time and place, and especially could not testify that such agreement took place in Kansas,[3] and 2) that claimant's testimony that she and Mr. Thrash intended someday to have a wedding in Las Vegas negated the idea that she and Mr. Thrash believed that they were already married.

Petitioner's first argument as to the necessity of a specific verbal agreement forces us to focus on the question of exactly what is the nature of this "marriage agreement" as required under Kansas law.

An early Kansas case described the requirements for a common law marriage, and more particularly the marriage agreement:

"  .   .   .   the mutual present assent to immediate marriage by persons capable of assuming that relation is sufficient, without any formal solemnization. Such a contract constitutes a marriage at common law, and its validity will be sustained, unless some statute expressly declares it to be void."
*State v. Walker*, 36 Kan. 297, 13 P. 279, 283, 284, 59 Am.Rep. 556 (1887).

The court elaborated:

"In *Teter v. Teter*, 101 Ind. 129, the supreme court of Indiana, while holding that ceremonial rites were not indispensable, and that the intention to assume the relation of husband and wife, attended by pure and just motives, and accompanied by an open acknowledgment of that relation, is sufficient to constitute marriage, stated that 'persons may be punished for not obtaining licenses to marry, or for not taking steps to secure a proper record of

---

3. Petitioner argues that if this verbal agreement did not occur within the borders of the state of Kansas, the marriage would somehow be invalid under Kansas law.

the marriage; but there may nevertheless be a valid marriage.'"

13 P. at 284.

and stated:

"*When persons who are permitted to marry 'live together as man and wife,' it may be taken as an expression of consent; and consent, under these circumstances, is sufficient, as we have seen, to constitute a marriage at common law.*"

13 P. at 285 (Emphasis added).

The problem of proving the existence of such an agreement in court may be met by inference from conduct. In *Cain v. Cain*, 160 Kan. 672, 165 P.2d 221, 223 (1946) the court explained:

"The requisites for a common-law marriage are present capacity of the parties, a contract to assume the marriage status at the time the contract was made and a holding of each other out to the public as husband and wife. *It is not necessary that the contract be in any particular form.* In *Renfrow v. Renfrow*, 60 Kan. 277, 56 P. 534, 535, 72 Am.St.Rep. 350, we said:

'If a marriage contract need not be evidenced by writing,—and, of course, it need not be,—we can conceive of no reason why it may not, like many other civil contracts, *be evidenced by acts and conduct from which its making ore tenus may be presumed.*'" (Emphasis added).

■ It would seem, then, that under Kansas law no particular formal words between the parties should be 'necessary to create this marriage agreement, but rather that evidence of conduct between the parties consistent with its existence is sufficient proof that there was such an agreement. For this Court to require testimony of a specific formal contract would be contrary to the idea that such an agreement can be inferred from the conduct of the parties.

■ As the court in *Cain* observed, where the parties had a capacity to contract and held each other out to the public as husband and wife, among other circumstances, the trial court was warranted in drawing the inference that there was a present contract between the parties to assume the marriage relationship. Petitioner's contention that it is necessary to show that the agreement was express and verbal between the parties, and occurred at a specific time and place within the borders of the state of Kansas, is not supported by any Kansas law cited to us. Rather, no express exchange of formal words of consent seems to be necessary to establish the existence of the agreement. In *Tyner v. Schoonover*, 79 Kan. 573, 100 P. 478 (1909) the court said that a common law marriage might be shown by:

". . . *acknowledgment, cohabitation, and repute*, and must necessarily be shown by other than record evidence." (Emphasis added).

*See also, Gillaspie v. E. W. Blair Construction Co.*, 192 Kan. 455, 388 P.2d 647 (1964).

■ In the instant case, there was abundant evidence before the hearing officer that Mr. Thrash at all times considered the claimant as his wife, consistently acknowledged her in public as his wife, and that the only reputation the parties enjoyed was as husband and wife to the other. Absent evidence negating the inference that such behavior was pursuant to a marriage agreement, under Kansas law this is sufficient to establish the existence of the requisite agreement to marry.

■ Petitioner next contends that claimant's testimony concerning the plans to go to Las Vegas and be married "to have a piece of paper" contradicts her testimony that she and Mr. Thrash felt that they were already married. It is axiomatic that the hearing officer's determination as to the credibility of a witness will not be overturned on appeal, *Ranger Insurance Co. v. Industrial Commission*, 15 Ariz.App. 45, 485 P.2d 869 (1971) and his findings will be upheld if reasonably supported. *Micucci v. Industrial Commission*, 108 Ariz. 194, 494 P.2d 1324 (1972). If there is any conflict here, the hearing officer resolved it in favor of the claimant.

■ We note that Kansas law supports the conclusion of the hearing officer that a

stated intention to have a marriage ceremony in the future does not necessarily negate the idea that the parties had an ongoing marriage agreement. In *Gillaspie v. E. W. Blair Construction Co.*, 192 Kan. 455, 388 P.2d 647, at 650 (1964), a case remarkably similar in factual setting to the case at hand, the court observed:

"In the instant case the district court found there was a valid common-law marriage, and the evidence abundantly sustains the finding. The claimant was divorced from her former husband on May 28, 1961. Six days later, on June 4, 1961, she and Gillaspie presently agreed to be married despite the fact no marriage ceremony was performed. Pearl's union with Gillaspie was entered into in good faith and cohabitation was genuinely matrimonial in its inception on the part of both. They publicly acknowledged each other as husband and wife, assumed marriage rights, duties and obligations and were reputed to be husband and wife in the communities in which they lived. While the marriage of Pearl and Gillaspie was of no legal effect in the first instance (G.S.1949, 60–1512), persistence of the relation after Pearl's disability was removed on November 28, 1961, made them husband and wife under the common law without further proof of a new express exchange of consent. (*Matney v. Linn*, 59 Kan. 613, 54 P. 668; *Renfrow v. Renfrow*, 60 Kan. 277, 56 P. 534; *Schuchart v. Schuchart*, 61 Kan. 597, 60 P. 311, 50 L.R.A. 180, 78 Am.St.Rep. 342; *Freeman v. Fowler Packing Co.*, supra [135 Kan. 378, 11 P.2d 276]; *Haywood v. Nichols*, 99 Kan. 138, 160 P. 982; *Peters v. Peters*, 177 Kan. 100, 276 P.2d 302.) *The fact that the parties may have intended to have a marriage ceremony performed in the future at Las Vegas becomes immaterial.* At Gillaspie's death Pearl became his widow."

(Emphasis added).

The hearing officer's conclusions, for which there is ample support in the record, are in conformity with both Kansas and Arizona law. His decision is therefore affirmed.

FROEB, P. J., and JACOBSON, J., concur.