870 P.2d 1188

**Mary GONZALEZ, a single woman, Plaintiff–Appellee, Cross Appellant,**

v.

**Nona SATRUSTEGUI, individually and as Personal Representative of the Estate of Frank Satrustegui, Defendant–Appellant, Cross Appellee.**

No. 1 CA–CV 91–0484.

Court of Appeals of Arizona, Division 1, Department E.

Dec. 16, 1993.

Review Dismissed April 19, 1994.

Aspey, Watkins & Diesel by Frederick M. Aspey and Jane A. Butler, Flagstaff, for appellee.

Mangum, Wall, Stoops & Warden by Robert W. Warden, Flagstaff, for appellant.

## OPINION

LANKFORD, Judge.

In this appeal from summary judgment in a will contest, we find that there are no disputed genuine issues of fact regarding the validity of a will, the sufficiency of evidence establishing a contract to make a will, the validity of an alleged common law marriage, and the validity of a testamentary disposition of property in a partnership agreement. For these reasons, we affirm the summary judgment in favor of Appellee, Mary Gonzalez.

Frank Satrustegui ("Frank") and appellant Nona Satrustegui ("Nona") lived together from 1974 until Frank's death in 1988. During that time they held themselves out as husband and wife. They jointly operated a bar in Williams, Arizona, pooled their income, held joint bank accounts, jointly held title to a condominium in Phoenix, and were joint tenants of a safety deposit box. From at least 1983 until Frank's death, they filed joint federal and state tax returns as husband and wife. In 1984, Frank and Nona traveled to Kansas for Nona's family reunion and stayed there for about a week. While in Kansas, they held themselves out to Nona's family as husband and wife.

In the fall of 1986, Frank and Nona agreed to make joint and reciprocal wills. They ordered form will kits by mail. When the forms arrived, Nona filled in the blanks. Frank's will stated that he was married to Nona Satrustegui and that all of his estate would go to his wife. Frank named Nona as his personal representative and named an alternate personal representative. The form stated that all previous wills and codicils were revoked. Similarly, Nona's form stated that she was married to Frank Satrustegui and that all of her property would go to him. Frank was to be Nona's personal representative, and she also listed an alternate personal representative.

On November 10, 1986, Frank and Nona took their forms to a bank in Williams. They signed them in the presence of each other and Carol Steffens, a bank employee. Steffens notarized their signatures. No one else witnessed the signing, and no witnesses signed either form in the places provided for witness signatures.

Frank died suddenly in June, 1988. Nona is identified on Frank's death certificate as his wife.

In July, 1988, Nona, identifying herself as Frank's wife, commenced a probate proceeding in superior court for Frank's estate. She was appointed personal representative of the estate. Her application for appointment stated that she was unaware of any unrevoked testamentary instrument executed by Frank. Nona filed a closing statement in March, 1989, and all of Frank's real and personal property, totaling about $226,000, was distributed to her.

In June 1989, appellee Mary Gonzalez, Frank's sister, filed a petition with the court alleging that the assets of the estate were improperly conveyed to Nona. She asked the court to remove Nona as personal representative and appoint Gonzalez as personal representative of Frank's estate, to set aside the transfers of the estate assets to Nona, and to order an accounting of estate assets and income. In response, Nona asserted that on November 10, 1986, Frank had executed a will in which he devised all of his property to Nona.

Gonzalez filed a motion for summary judgment arguing that the 1986 will was not valid because it was not executed in accordance with the formal requirements of Ariz.Rev. Stat.Ann. ("A.R.S.") section 14–2502 and that Nona could not take Frank's estate as his surviving wife because Frank and Nona were not married. Gonzalez based her claim to the estate on a will executed by Frank on October 21, 1971. In the 1971 will, Frank left all his property to Gonzalez and appointed her as his personal representative. The 1971 will was drafted by an attorney and signed by the attorney and his wife as witnesses.

In response, Nona argued that there was no dispute that Frank signed the will form in the presence of two witnesses, Nona and Carol Steffens. She further argued that she and Frank had a valid common law marriage because they held themselves out as married during a week-long visit to Kansas.

Nona also filed a cross-motion for summary judgment alleging that even if the form was not a valid will, it constituted a written contract to make a will leaving his estate to Nona. Alternatively, Nona asserted that she had a valid partnership with Frank in which they owned assets jointly and under which the survivor succeeded to the property of the other.

The superior court granted Gonzalez's motion for summary judgment and denied Nona's cross-motion for summary judgment. It entered partial summary judgment containing a certification of finality under Ariz.

R.Civ.P. 54(b). The judgment admitted the 1971 will to probate, removed Nona as personal representative, appointed Gonzalez as personal representative of Frank's estate, directed Nona to render an accounting of estate assets and income, and scheduled a trial to determine damages.

Nona filed a timely motion for new trial. She also submitted for the first time a copy of her 1986 will as a supplemental exhibit in support of her motion for new trial. Gonzalez moved to strike the supplemental exhibit. The court denied the motion for new trial and denied the motion to strike the supplemental exhibit. Nona timely appealed from the partial summary judgment and the denial of her motion for new trial. Gonzalez appealed from the denial of her motion to strike the supplemental exhibit.

The following issues are presented on appeal:

(1) Was the 1986 form an invalid will because it lacked the signatures of two witnesses as required by A.R.S. section 14–2502?

(2) Was there a contract to make mutual wills which gave Nona the right to all of Frank's property when he died?

(3) Did Frank and Nona have a common law marriage which entitled Nona to Frank's estate pursuant to A.R.S. sections 14–2102(2) and 14–2301?

(4) Was there a partnership agreement between Frank and Nona whereby the survivor would succeed to all of the decedent's property?

The cross-appeal presents a single issue: Did the trial court abuse its discretion by allowing a copy of Nona's will to be admitted into evidence with a motion for new trial after summary judgment adverse to Nona had been entered?

## I.

Because the cross-appeal raises an evidentiary issue that affects the record on appeal, we consider it first. Gonzalez argues that the trial court should not have allowed Nona's 1986 will into evidence because it did not constitute newly discovered evidence, was hearsay, was not properly authenticated

and because it was prejudicial to admit a copy of the will in lieu of the original.

We will not disturb rulings on the exclusion or admission of evidence unless the court clearly abused its discretion and prejudice resulted. *Selby v. Savard,* 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982). In this instance, neither condition is present.

The admission of the document was not an abuse of discretion. In the summary judgment proceedings, Nona's deposition testimony regarding her 1986 will was cited to the court. In her deposition, she testified that her will was just like Frank's, that she left everything to Frank, and that she and Frank executed their wills simultaneously at the bank before notary Carol Steffens. In addition, accompanying her cross-motion for summary judgment, Nona submitted to the court an affidavit in which she stated that she executed her will on the same day that Frank executed his and that the wills were signed with the intent to carry out their agreement to execute mutual wills to leave all of their property to each other upon their deaths.

During oral argument on the motions for summary judgment, Nona's attorney explained that he had last seen Nona's will while preparing for a conference with opposing counsel on proposed exhibits and witnesses for trial and that he presumed the will was misplaced. He described the will as being a mirror image of Frank's will in which Nona left everything to Frank. The attorney offered to supplement the record with an affidavit concerning this matter if the court wished him to do so. The judge asked the attorney whether Nona's will also was not witnessed but was notarized, and the attorney responded that it was the same as Frank's will in that regard.

Gonzalez's attorney countered that Frank's will alone was insufficient to show an agreement to bequeath their property to one another. He argued that Nona's will was needed to show that it left everything to Frank. However, Gonzalez never disputed the accuracy of Nona's sworn statements as to the contents of her will. Thus, those representations were conceded for the pur-

pose of the motions for summary judgment, and Nona's failure to supply her will to the court at that time was not fatal to her position. *See Peacock v. Samaritan Health Serv.*, 159 Ariz. 123, 125, 765 P.2d 525, 527 (App.1988).

■ The trial court apparently rendered judgment relying on the oral representations of Nona and her attorney regarding the contents of her will. The later admission of Nona's will was not an abuse of discretion. An original writing is not required and its contents may be established by other evidence if the original has been lost for reasons other than bad faith. *See* Ariz.R.Evid. 1004(1). The will's admission also did not prejudice Gonzalez because it added no new facts and did not prompt the trial court to change its judgment in favor of Gonzalez. Accordingly, we do not believe the trial court abused its discretion in admitting the will. We now turn to the merits.

## II.

■ On appeal from a summary judgment we determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *United Bank v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App. 1990). When deciding whether a party is entitled to summary judgment, we view the evidence in the light most favorable to the nonmoving party. *Angus Medical Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 162, 840 P.2d 1024, 1027 (App.1992); *see* Ariz.R.Civ.P. 56(c). We will affirm if the trial court's disposition is correct for any reason. *U.S. Insulation, Inc. v. Hilro Constr. Co.*, 146 Ariz. 250, 705 P.2d 490 (App.1985); *Glaze v. Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App.1986).

■ Gonzalez argues that Frank's 1986 will is invalid because it was not signed by two witnesses. In A.R.S. section 14–2502, the legislature provided for the execution and witnessing of wills:

Except as provided for holographic wills, ... every will shall be in writing signed by the testator or in the testator's name by some other person in the testator's presence and by his direction, and shall be signed by at least two persons *each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will.*

(Emphasis added).

Nona responds that the statute was satisfied because two people—Carol Steffens and Nona—witnessed Frank's signing of his will and also signed it: Nona when she printed her name while filling out the will provisions and Carol when she notarized Frank's signature.

■ We hold that the will is invalid because it failed to comply with the signature requirement of A.R.S. section 14–2501. The right to make a will is a statutory right, and the legislature may specify the regulations and requirements for the making of wills as it pleases. *Estate of Muder*, 159 Ariz. 173, 174, 765 P.2d 997, 998 (1988). A will that does not comply with statutory requirements will be declared invalid, even though it accurately reflects the wishes of the testator. *Estate of Peters*, 107 N.J. 263, 526 A.2d 1005 (1987).

■ The proper witnessing of a will is essential to its validity. Witnesses to the execution of wills serve two important functions. The "observatory" function is the direct and purposeful observation of the testator's acknowledgment of signing of the will. *Peters*, 526 A.2d at 1011. The "signatory" function is the signing of the will by the witnesses. The witnesses' signatures have significance "as an evidentiary requirement or probative element, serving both to demonstrate and to confirm the fulfillment of the observatory function by the witnesses." *Id.* The signatures of attesting witnesses guard against false and fraudulent wills and provide a means of proving the authenticity of wills. *In re La Mont's Estate*, 39 Cal.2d 566, 248 P.2d 1, 3 (1952).

The standard of review requires that we accept Nona's assertions that two people saw Frank sign his will and that these two people affixed their names to Frank's will. But the question remains whether this constitutes the

witness signatures required by section 14–2502.

Our interpretation of section 14–2502 is guided by fundamental principles of statutory construction. It is our duty to ascertain the intent of the Legislature in interpreting a statute. *State v. Rice*, 110 Ariz. 210, 212–13, 516 P.2d 1222, 1224–25 (1973). The best and most reliable index of a statute's meaning is its language, and where the language is clear and unequivocal, it is determinative of a statute's construction. *Pima County Juvenile Appeal No. 74802–2*, 164 Ariz. 25, 33, 790 P.2d 723, 731 (1990); *Arizona Sec. Ctr., Inc. v. State*, 142 Ariz. 242, 244, 689 P.2d 185, 187 (App.1984). We give clear statutory language its usual meaning unless an impossible or absurd consequence results. *In re Marriage of Gray*, 144 Ariz. 89, 91, 695 P.2d 1127, 1129 (1985); *State v. Wagstaff*, 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990).

There are a number of problems with accepting Nona's printed name as a witness signature: (1) her name is printed rather than signed with her usual signature; (2) her name is not written at the place indicated on the form for witnesses to sign; (3) when she printed her name, she did not intend to sign as a witness to the testator's signing of the will; and (4) she printed her name on the will substantially before she observed Frank execute the will. The last of these defects is dispositive. We conclude that Nona's printing of her name in a blank on Frank's will form to complete the sentence, "I am married to ___," does not constitute a witness signature for purposes of section 14–2502.

Section 14–2502 requires the signatures of two witnesses "each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will." These words reveal the legislative intent. A signatory to a will must have "witnessed" the will's signing or acknowledgment by the testator. The Legislature's choice of the past tense of "witness" precludes witnesses from signing the document *before* they have seen the testator sign or acknowledge the will. It is undisputed that Nona filled in the blanks on Frank's form before Frank executed it. This violated section 14–2502.

Nevertheless, Nona notes that courts in other jurisdictions have upheld the validity of wills which witnesses signed months after observing the testators sign. She argues that although she has not done so, she could even now validly witness Frank's will.

We believe that allowing witnesses to sign wills after the testator's death would undermine the statute and open the door to possible mischief. *In re Estate of Flicker*, 215 Neb. 495, 339 N.W.2d 914 (1983), considered whether a wills statute allowed witnesses to sign after the testator's death. The court construed the statute, which is identical to that used in Arizona, to require that the witnesses sign a will before the testator's death. 339 N.W.2d at 915. The *Flicker* court explained:

> Permitting witnesses to sign a will after the death of a testator would erode the efficacy of the witnessing requirement as a safeguard against fraud or mistake. We must bear in mind that we are dealing with an instrument allegedly signed or acknowledged by a man who is now dead. He is not present to confirm or reject it. Requiring completion of formalities of execution prior to death is likely to minimize miscarriages of justice.

*Id.* *See also Estate of Mikeska*, 140 Mich. App. 116, 362 N.W.2d 906 (1985) (agreeing with *Flicker*).

*Estate of Peters*, 107 N.J. 263, 526 A.2d 1005 (1987) also considered whether the statute requiring the signatures of two witnesses allowed a witness to sign the will after the testator died. That court concluded that although a witness may sign within a reasonable time after observing the testator's signing of the will, the fifteen months that had passed before the death of the testator was sufficient time within which to sign the will, thus precluding the witness from doing so after his death. *Id.* 526 A.2d at 1013. The court said the signature of a witness would fail in its evidentiary purpose if the witness were permitted to sign at a time remote from the witnessing of the testator's execution. *Id.* at 1011.

We agree with *Flicker* and *Peters* that to allow witnesses to sign a will after the death of the testator would undercut the safeguards against fraud and mistake that are among the purposes of the statute. Although a belated signature in this or any other particular case may not be fraudulent or mistaken, the rule is prophylactic and requires uniform application.

Finally, we note that the comment to Uniform Probate Code section 2–502, on which A.R.S. section 14–2502 is based, states that "[t]he formalities for execution of a witnessed will have been reduced to a minimum" with the intent to validate wills that meet the minimal formalities of the statute. A further reduction in formalities would simply trivialize the few requirements imposed by law.

In summary, we conclude that the November 10, 1986 instrument signed by Frank is not signed by two witnesses as required by section 14–2502 and therefore is not a valid will. Although there are several problems with accepting Nona's signature as a witness, the decisive one is that it would vitiate the witness signature requirement. Because Nona's name on the will fails to qualify as a witness signature, we need not decide whether the signature of the notary public can simultaneously be recognized as one of the statutory witnesses for the will.[1]

### III.

Nona next argues that Frank's failed 1986 will, taken together with Nona's contemporaneously executed will, contain the material provisions of a specifically enforceable contract to make a will in Nona's favor. We disagree and find that these wills do not evidence an express contract to make mutual wills.

A.R.S. section 14–2701 governs contracts to make a will. It provides:

A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after the effective date of this title, can be established only by one or more of the following:

1. Provisions of a will stating material provisions of the contract.

2. An express reference in a will to a contract and extrinsic evidence proving the terms of the contract.

3. A writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

The purpose of this provision is to restrict contracts to make wills. The statute creates a "mini-statute of frauds" that "supplements the common-law rule that a contract to make a will must be clearly proved and certain and unambiguous in all of its terms." *Estate of Moore*, 137 Ariz. 176, 179, 669 P.2d 609, 612 (App.1983). Section 14–2701 is similar to that in A.R.S. section 44–101, Arizona's general contract statute of frauds. To satisfy section 44–101, a memorandum must provide the terms and conditions of all the promises contained in the contract, and the terms may not be supplied by parol evidence. *Id.* The comment to Uniform Probate Code section 2–701, from which section 14–2701 was derived, states that the section is intended to tighten the methods of proof of such contracts. *Id.*

In this case, Nona relies on subsection three of section 14–2701 by asserting that Frank's will represents a "writing signed by the decedent evidencing the contract." The difficulty is that Frank's will, even when considered in tandem with Nona's will, contains neither a reference to the alleged contract nor any language of exchange, promise, duty or consideration indicating an intent to contract. For example, nothing indicates that Frank's devise was conditioned upon a reciprocal will by Nona. While the will clearly demonstrates Frank's intent to devise his property to Nona, it fails to show that he intended to contractually obligate himself to do so. The difference is quite significant: a will is revocable at any time, while revocation of a contract may constitute a breach for which the breaching party is liable in damages.

---

**1.** This issue has never been directly addressed by an Arizona court, although it can be argued, as does the appellee, that the Arizona Supreme Court indirectly answered this issue in *Estate of Muder,* 159 Ariz. 173, 765 P.2d 997 (1988).

■ The failed written wills themselves do not prove that a contract to make wills existed. A will made in accordance with the terms of an alleged contract to make a will does not establish the existence of the contract. *Brought v. Howard,* 30 Ariz. 522, 249 P. 76 (1926). The two wills are just that: two separate testamentary instruments. The characteristics of a contract are absent. *See Rogers v. Rogers,* 136 Mich.App. 125, 356 N.W.2d 288 (1984) (mutual, reciprocal wills insufficient to establish contract to create such wills); *Olesen v. Manty,* 438 N.W.2d 404 (Minn.App.1989) (mutual, reciprocal wills did not establish existence of contract to create wills because they lacked "material provisions" of contract); *Simmons v. Ewing,* 96 Idaho 380, 529 P.2d 776 (1974) (will standing alone is not a contract).

■ Nor does A.R.S. section 14–2701 permit us to consider parol evidence, such as Nona's testimony, in determining whether a contract to create a will exists. The statute requires written evidence, for reasons set forth in a treatise on wills:

> Written evidence is more necessary in contracts of this sort than in the classes of contracts covered by the ordinary provisions of the statute of frauds. An unscrupulous claimant, who can secure perjured evidence, can set up and prove an oral contract. The death of the promisor makes it impossible to contradict the testimony to the effect that he made such promise; and the fact that the transaction never happened makes it all the harder to disprove it if the guilty parties have been careful to make their story fit the possibilities of time and place.

1 Bowe–Parker, *Page on Wills* § 10.10, at 464 (3rd ed. 1960).

We do not suggest that an unscrupulous claimant is involved in this case. However, the requirement of written evidence of the contract operates generally to prevent fraud and mistake, and thus warrants application of the rule even when it arguably negates the parties unwritten expressions. Considering that one of the parties to a contract of succession is no longer alive, it is good public policy to demand that written evidence of the contract be introduced. *Orlando v. Prewett,* 218 Mont. 5, 705 P.2d 593, 597–98 (1985).

The wills in this case fail to satisfy the requirements of section 14–2701. They are devoid of the material provisions and characteristics of a contract, make no express reference to a contract and cannot be considered a writing evidencing a contract.

## IV.

The next issue is whether Nona is entitled to all of Frank's real and personal property by right of intestate succession as his common law wife. She asserts that a valid common law marriage arose during a week-long visit to Kansas, and that Arizona must recognize this marriage even though such unions cannot be created in this state. Nona asserts that as Frank's common law wife, she is entitled by operation of law to the whole of Frank's estate as an "omitted spouse." A.R.S. § 14–2301.[2]

■ A common law marriage validly conceived in another state will be recognized in Arizona and given the same legal significance as if the marriage were effectively contracted in Arizona. *Grant v. Superior Court,* 27 Ariz.App. 427, 555 P.2d 895 (App.1976); *In re Estate of Trigg,* 3 Ariz.App. 385, 414 P.2d 988 (1966), *aff'd,* 102 Ariz. 140, 426 P.2d 637 (1967).

■ The elements of a common law marriage in Kansas are (1) a capacity to marry, (2) a present marriage agreement and (3) a holding out of each other as man and wife. *Mission Ins. Co., v. Industrial Comm'n,* 114 Ariz. 170, 171, 559 P.2d 1085, 1086 (App. 1976); *Schrader v. Schrader,* 207 Kan. 349, 484 P.2d 1007, 1008 (1971); *see also Renfrow*

2. The statute reads:
A. If a testator fails to provide by will for his surviving spouse who married the testator after the execution of a will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will unless it appears from the will that the omission was intentional or the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

*v. Renfrow,* 60 Kan. 277, 56 P. 534 (1899); *In re Estate of Freeman,* 171 Kan. 211, 231 P.2d 261 (1951); *Gillaspie v. E.W. Blair Constr. Co.,* 192 Kan. 455, 388 P.2d 647 (1964).

In this case, there is no question that Frank and Nona had the capacity to marry, and the record is replete with references to how the couple held themselves out as man and wife. The remaining issue is whether they had a present marriage agreement. Such an agreement is an indispensable element of a common law marriage in Kansas. *Schrader,* 484 P.2d at 1008; *Sullivan v. Sullivan,* 196 Kan. 705, 413 P.2d 988 (1966). This agreement need not be in writing and can be inferred by the parties' conduct. *Mission,* 114 Ariz. at 173, 559 P.2d at 1088.

Any inference of a present marriage agreement in this case was negated by Nona's deposition testimony. In response to a question of why she and Frank never married, Nona stated:

I don't know. Just one of those things. To us, it wasn't that important. It's one of those things you put off. We talked about it a lot. Wherever we went, we thought, well, we should. In Phoenix when we stayed down there in the condo, we thought we ought to get married. In fact, just the night before Frank passed away we were talking about it.

This testimony reveals that there was no present marriage agreement and that Nona and Frank merely *contemplated* marriage. *See Schrader,* 484 P.2d at 1008–09 (contemplation of remarriage if reconciliation is successful did not evidence present marriage agreement). Absent a present marriage agreement, no common law marriage existed and Nona cannot take Frank's estate under Arizona law as an omitted spouse. *Schrader,* 484 P.2d at 1009.

### V.

Nona's final argument is that she and Frank entered into a valid partnership agreement in which they pooled their income and agreed to share in the property acquired. Nona asserts that this oral agreement included a provision under which "in the event of death, the survivor would succeed to all of the property owned by the decedent as if all of the decedent's separate property was held in joint tenancy with the survivor." She asserts that this agreement with Frank was sufficiently evidenced by their conduct in the years preceding his death and need not be in writing. Nona relies on this agreement to assert that she is entitled to all of Frank's property.

An agreement or instrument is testamentary in nature "when it is written or made so as not to take effect until after the death of the person making it ..." BLACK'S LAW DICTIONARY 1474 (6th ed. 1990). A testamentary disposition is "[t]he passing of property to another upon the death of the owner." *Id.* at 1475.

The right to make a testamentary disposition of property is purely of statutory creation and is available only on compliance with the requirements of the statute. *In re Tyrrell's Estate,* 17 Ariz. 418, 422, 153 P. 767, 768 (1915); *Estate of Wilkins,* 54 Ariz. 218, 94 P.2d 774 (1939). A testamentary disposition of property can be accomplished only by means of a valid will. *McNabb v. Fisher,* 38 Ariz. 288, 299 P. 679 (1931). In Arizona, the statute governing the creation of a will is A.R.S. section 14–2502. Section 14–2502 requires "a writing signed by the testator."

In this case, Nona's characterization of the purported partnership agreement leaves no doubt that it is an ineffective unsigned testamentary disposition. While alive, Frank retained sole title to the property in question. The contemplated change in ownership would have occurred upon Frank's death. As an oral testamentary disposition, the agreement is invalid under section 14–2502.

Nona nevertheless argues that the agreement and its provision are valid. In support of her argument, Nona cites *Cook v. Cook,* 142 Ariz. 573, 691 P.2d 664 (1984) and *Carroll v. Lee,* 148 Ariz. 10, 712 P.2d 923 (1986). These two decisions address the validity of partnership agreements between unmarried cohabitants. In both cases, the parties to the agreement were living, the agreements were not testamentary, and section 14–2502 did not apply. Nona conceded the distinction

when she argued that "in contrast to the *Cook* and *Carroll* cases, the agreement between Frank and Nona *contained an additional term that in the event of death,*" the survivor would succeed to all of the decedent's property. (Emphasis added). This additional term changed the agreement from one dividing property to one contemplating a testamentary disposition of property.

For the foregoing reasons, we affirm the superior court's summary judgment in favor of Gonzalez.

VOSS, P.J., and GERBER, J., concur.