81 P.3d 1040

Salvatore **BENTIVEGNA** and Frances Bentivegna, husband and wife, Plaintiffs–Appellants,

v.

**POWERS STEEL & WIRE PRODUCTS,** INC., an Arizona corporation, Defendant–Appellee.

No. 1 CA–CV 03–0226.

Court of Appeals of Arizona, Division 1, Department E.

Dec. 31, 2003.

As Amended Jan. 6, 2004.

Stephen I. Dokken, Scottsdale, and Ulrich & Anger, P.C. By Paul G. Ulrich, Melinda K. Cekander, Phoenix, Attorneys for Plaintiffs–Appellants.

Garrey, Woner, Khalil & Peshek, P.C. By D. Reid Garrey, Margaret Z. Khalil, Scottsdale, Attorneys for Defendant–Appellee.

## OPINION

IRVINE, Judge.

¶ 1 Salvatore and Frances Bentivegna (collectively "the Bentivegnas") appeal the trial court's summary judgment in favor of Powers Steel & Wire Products, Inc. ("Powers") in this action seeking restitution and damages for breach of contract, breach of warranty, and negligence arising from Powers' alleged failure to properly construct a steel warehouse. The trial court ruled that the Bentivegnas' claims were barred because they failed to exhaust their administrative remedies by appealing the decision of the Registrar of Contractors ("ROC") on their complaint against Powers, that their negligence claim was barred by the two-year statute of limitations, and that Arizona Revised Statutes ("A.R.S.") section 32–1153 (which provides that unlicensed contractors cannot sue to collect money due under the contract) does not support a claim for restitution of amounts paid to the unlicensed contractor. For the following reasons, we conclude that the Bentivegnas' breach of contract and breach of warranty claims are not barred by the doctrine of exhaustion of administrative remedies, but that A.R.S. § 32–1153 does not support their claim for restitution.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In 1997, the Bentivegnas hired a general contractor, Albert L. Rice dba Electro Contracting ("Rice"), to prepare the site and construct a new warehouse for their business. The warehouse was to be a metal building with a concrete floor slab. The total cost of the project was $204,318, which included $85,000 for construction of the metal warehouse. Powers was hired to construct the metal portion of the warehouse. Powers required both Salvatore Bentivegna and Rice to sign a contract for $85,000 for the construction.

¶ 3 When Powers entered the contract and did the work, Powers possessed only a Class L–62 license, allowing it to perform reinforcing bar and wire mesh work. A Class A–11 license or Class B–01 license was required for erecting steel buildings. Powers did not tell the Bentivegnas or Rice that it did not have the correct license to perform the work until after the work was completed.

¶ 4 Powers completed its work on the warehouse in January 1998, and as of January 22, 1998, the Bentivegnas had paid Powers the entire $85,000: $76,500 directly to Powers and $8,500 through Rice. Both the foundation contractor and Powers, however, made unauthorized changes to the structural engineer's approved plans, and the warehouse, as finally constructed, had several material defects. The Bentivegnas' expert witness, Daniel C. Barnett, estimated that it would cost at least $97,297, plus engineering fees and any cost increases, to repair the structural and non-structural defects.

¶ 5 The Bentivegnas filed a complaint against Powers with the ROC. The ROC issued a corrective work order, requiring Powers to correct many of the defects in the warehouse. The Bentivegnas also filed an additional complaint against Rice with the ROC. The ROC issued a corrective work order and an amended corrective work order to Rice, which ordered Rice to correct numerous defects in the site and building. In November 1999, the Bentivegnas settled their claims against Rice and the ROC entered a final order regarding the complaint against Rice based upon the settlement.

¶ 6 In March 2001, the Bentivegnas filed the complaint in this case against Powers, alleging claims for breach of contract, breach of warranty, negligence, and restitution. In April 2002, the Bentivegnas moved for partial summary judgment on the issue of their entitlement to restitution of the $85,000 they had

paid Powers to construct the warehouse. The Bentivegnas argued that because A.R.S. § 32–1153 precludes unlicenced contractors from bringing suit for payment for work performed, they were entitled to full restitution of all funds they had paid to Powers. Powers responded and moved for summary judgment on all counts of the complaint, arguing that the Bentivegnas had elected to pursue an administrative remedy by filing their complaint with the ROC and, having failed to appeal from the ROC's decision, were barred from suing in court. Powers also argued that the statute of limitations barred the Bentivegnas' negligence claim. Finally, Powers contended that it was an indispensable party · to the settlement between Rice and the Bentivegnas and, therefore, that settlement precluded the Bentivegnas from suing Powers under the doctrine of merger and bar.

¶ 7 The trial court denied the Bentivegnas' motion and granted Powers' cross-motion for summary judgment, finding that Powers had completed the work ordered by the ROC and that the Bentivegnas had settled their claims against Rice. The court ruled that A.R.S. § 32–1153 did not require repayment of funds paid to an unlicensed contractor and denied the Bentivegnas' motion for summary judgment on their restitution claim. The court further concluded that the Bentivegnas' failure to appeal the ROC's decisions regarding Powers' work barred this action. Finally, the court concluded that the two-year statute of limitations barred the Bentivegnas' claim for negligence, because the Bentivegnas knew or should have known of Powers' alleged negligence in the Spring of 1998, but did not file their negligence claim until March 2001.

¶ 8 The trial court denied the Bentivegnas' motion for new trial and awarded Powers attorneys' fees in the reduced amount of $9200 pursuant to A.R.S. § 12–341.01, which allows the trial court to award fees to the successful party in a contested action arising out of a contract. We have jurisdiction over the Bentivegnas' timely appeal from the final judgment pursuant to A.R.S. § 12–2101(B).

## DISCUSSION

### A. Work Completed Pursuant to ROC Work Orders

■ ¶ 9 The Bentivegnas first contend that the trial court erred in granting summary judgment to Powers based on its finding that the repairs to the warehouse were completed in accordance with the ROC work orders, arguing that no evidence supported the trial court's finding.

■ ¶ 10 On appeal from summary judgment, we view the evidence in the light most favorable to the party against whom judgment was entered. *Pioneer Annuity Life Ins. Co. v. Rich,* 179 Ariz. 462, 464, 880 P.2d 682, 684 (App.1994). "[W]e determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui,* 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993) (citation omitted). "Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 482, ¶ 13, 38 P.3d 12, 20 (2002) (citations omitted).

¶ 11 We have reviewed the record and agree with the Bentivegnas that the trial court erred in finding that Powers had completed the work required by the ROC's corrective work order. Powers cites nothing in the record that affirmatively indicates that Powers ever fully complied with the work order. At most, a letter from Powers' attorney to the attorneys for Rice and the Bentivegnas indicates that Rice had agreed to perform the work using some of Powers' employees and that Powers would pay Rice for doing the work. The letter, however, continued by disputing that Powers had authorized Rice to perform a number of tasks that Rice and the Bentivegnas apparently had agreed upon. The letter concluded by stating "Powers Steel will take action to correct those items identified" in the corrective work order, but not others. Nothing in the letter indicates that any corrections had already been made. We conclude that the trial

court erred in finding that the work had been completed in accordance with the work orders.

## B. Exhaustion of Administrative Remedies

■ ¶ 12 Powers argues that whether or not the work was done, the corrective work order was issued and the Bentivegnas failed to follow-up on it by requesting a hearing or other action by the ROC. Thus, Powers argues, the Bentivegnas failed to exhaust their administrative remedies and are barred from bringing this suit alleging the same defects. In support of this proposition, Powers cites A.R.S. § 32–2159(A), the statute governing appeals from decisions of the real estate commissioner, as well as A.R.S. §§ 12–901 et seq., the general statutes governing administrative appeals. Powers argues that, because the ROC is an administrative agency with a procedure for review of its decisions, a party must exhaust all administrative remedies and properly appeal them to obtain judicial review. *See, e.g., Hinz v. City of Phoenix*, 118 Ariz. 161, 164, 575 P.2d 360, 363 (App.1978) (noting it is a "well-established principle of law that administrative remedies must be exhausted before judicial relief can be sought.").

■ ¶ 13 The exhaustion of administrative remedies doctrine, however, does not apply "where, by the terms or implications of the statute authorizing an administrative remedy, such remedy is permissive only or not exclusive of the judicial remedy, warranting the conclusion that the legislature intended to allow the judicial remedy even though the administrative remedy has not been exhausted." *Farmers Inv. Co. v. Ariz. State Land Dept.*, 136 Ariz. 369, 373, 666 P.2d 469, 473 (App.1982) (quoting 2 Am.Jur.2d, *Administrative Law*, § 598 at 432–33 (1962)); *see also Southwestern Paint & Varnish Co. v. Ariz. Dep't of Envtl. Quality*, 194 Ariz. 22, 24, ¶ 14, 976 P.2d 872, 874 (1999). The Bentivegnas contend that the ROC complaint procedure is permissive and not subject to the exhaustion of remedies doctrine. We agree.

■ ¶ 14 Section 32–1155(A), A.R.S. (2003), provides:

Upon the filing of a written complaint ... charging a licensee with the commission ... of an act which is cause for suspension or revocation of a license, the registrar after investigation *may* issue a citation ... directing the licensee ... to appear by filing ... [a] written answer to the citation and complaint showing cause, if any, why [the licensee's] license should not be suspended or revoked.

(Emphasis added.) Thus, "although a private complainant may prompt the Registrar's initial investigation, the Registrar chooses whether and to what extent to pursue its administrative proceeding." *Mission Hardwood Co. v. Registrar of Contractors*, 149 Ariz. 12, 16, 716 P.2d 73, 77 (App.1986). Nothing in the statute indicates that the ROC's decision regarding whether to pursue a complaint is intended to bind the complainant by limiting his access to the courts pending exhaustion of the ROC procedures.

■ ¶ 15 Moreover, the sole issue in a proceeding before the ROC is whether a license should be suspended or revoked, and, if so, what conditions must be fulfilled before it is reinstated. *See* A.R.S. §§ 32–1154, – 1155. Although the ROC may order restitution as a condition of license reinstatement, it cannot issue an enforceable order or judgment for money damages against a contractor. *See Sunpower of Ariz. v. Ariz. State Registrar of Contractors*, 166 Ariz. 437, 441, 803 P.2d 430, 434 (App.1990) (ROC may order payment of restitution as condition of license reinstatement); *J.W. Hancock Enter's, Inc. v. Ariz. State Registrar of Contractors*, 142 Ariz. 400, 406, 690 P.2d 119, 125 (App.1984) (finding that "[t]he Registrar's power is limited to suspending or revoking a contractor's license, or attaching conditions to the license. Money damages may not be awarded."). If a contractor subject to an ROC restitution order were to choose not to have his license reinstated, the restitution order would be ineffective. To fully protect a plaintiff's rights, he must be allowed to seek money damages in the courts in addition to any remedies available through the ROC complaint procedure.

■ ¶ 16 Finally, "[w]e accord great weight to an agency's interpretation of a

statute." *Better Homes Const., Inc. v. Goldwater*, 203 Ariz. 295, 299, ¶ 15, 53 P.3d 1139, 1143 (App.2002). Here, information available to the public on the ROC's internet site, in a printable pamphlet entitled "A Consumer's Guide ... Filing Construction Complaints," clearly advises potential claimants that:

> The Registrar of Contractors offers one way to resolve your problems with a licensed contractor, however, we are not a substitute for the courts. If ... your primary interest is to obtain restitution rather than having poor workmanship corrected, you should consider filing a civil court action.
>
> . . .
>
> ... You do not have to wait for the Registrar to complete its action before filing suit in court.

Ariz. Registrar of Contractors, "A Consumer's Guide ... Filing Construction Complaints" pamphlet, *available at* http://www.rc.state.az.us/Acrobat/Public/CnsmrResCtr.pdf (Jan.2003). The ROC has interpreted the applicable statutes and rules as allowing a claimant to pursue a legal remedy in court without the need to first exhaust the administrative remedy. We defer to the agency's interpretation of the statutes because it is reasonable.

¶ 17 For these reasons, we conclude that the exhaustion of administrative remedies doctrine does not apply to the ROC complaint procedure, and does not bar the Bentivegnas from pursuing their claims in this case.[1] We reverse the trial court's judgment dismissing the Bentivegnas' claims as barred and remand for further proceedings on the breach of contract and breach of warranty claims.[2]

## C. Restitution Pursuant to A.R.S. § 32-1153

¶ 18 The Bentivegnas next argue that the trial court erred in rejecting their claim that they are entitled to restitution of all money paid to Powers, plus consequential damages, because Powers did not have a license to perform the work it contracted to perform. Section 32-1153, A.R.S. (2003), provides:

> No contractor ... shall ... commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter [requiring contractors' licenses] without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

¶ 19 The Bentivegnas contend that this section has been construed to mean that the unlicensed contractor's contract is illegal and void, not merely voidable. If the contract is void, they argue, the statute limits the unlicensed contractor's right to payment, on a quantum meruit or any other basis, even if the work is performed competently. *See Hunt v. Douglas Lumber Co.*, 41 Ariz. 276, 288–89, 17 P.2d 815, 820 (1933). If the Bentivegnas had refused to pay Powers even though it had performed perfect work, it would be precluded from suing to recover the contract price because it was unlicensed; thus, the Bentivegnas assert that they should be entitled to recover the sums they paid pursuant to the void contract, particularly when, as alleged here, the work was not performed properly.

¶ 20 While the Bentivegnas' argument is superficially appealing, we cannot read this interpretation into the plain language of the statute. One of the "fundamental principles of statutory construction" is the rule that:

> [T]he best and most reliable index of a statute's meaning is its language and,

---

1. The Bentivegnas also argue that their case is not barred by the principles of res judicata or collateral estoppel. The trial court did not expressly rely on these principles to bar the Bentivegnas' claim, and Powers does not argue that either of these doctrines bars the Bentivegnas' claims. Under these circumstances, we conclude that Powers has waived any argument that the Bentivegnas' claims are barred by res judicata or collateral estoppel.

2. The Bentivegnas do not challenge the trial court's ruling that their negligence claim is barred by the two-year statute of limitations.

when the language is clear and unequivocal, it is determinative of the statute's construction. *See Juvenile Appeal 74802-2,* 164 Ariz. 25, 33, 790 P.2d 723, 731 (1990); *State v. Sweet,* 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985). Therefore, if we find no ambiguity in the statute's language, we must give effect to that language and we may not employ other rules of construction to interpret the provision. *See Balestrieri v. Hartford Accident & Indem. Ins. Co.,* 112 Ariz. 160, 163, 540 P.2d 126, 129 (1975); *Board of Accountancy v. Keebler,* 115 Ariz. 239, 240, 564 P.2d 928, 929 (App.1977). *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Here, the plain language of the statute applies only to prevent the "contractor" from "commencing or maintaining" an action to collect pursuant to a construction contract without first proving that he was licensed both when the contract was entered and when the cause of action arose. The statute does not say that the unlicensed contractor may never retain money he has received, nor does it expressly provide that the customer of an unlicensed contractor may sue to recover sums actually paid pursuant to the contract.

¶ 21 The Bentivegnas cite *State v. Wilkinson,* 202 Ariz. 27, 39 P.3d 1131 (2002), for the proposition that they are entitled to restitution of the amount paid to Powers. In *Wilkinson,* an unlicensed contractor was convicted of two misdemeanor charges of acting in the capacity of a contractor without a license. *Id.* at 28, ¶ 3, 39 P.3d at 1132. The city court ordered, as part of his criminal sentence, that he pay restitution to the victims. *Id.* On appeal, the Arizona Supreme Court held that, pursuant to the criminal restitution statutes, the unlicensed contractor could be ordered to repay the amounts he had received from the victims, as these sums were the "direct" result of his criminal conduct—acting as a contractor without a license. *Id.* at 29, ¶ 9, 39 P.3d at 1133. Nevertheless, the court held that the sentencing court could not order restitution for "consequential" damages, such as the expenses incurred because the defendant failed to complete the work or performed substandard work. *Id.* at ¶ 10, 39 P.3d 1131.

¶ 22 *Wilkinson* does not support the Bentivegnas' argument. The court in *Wilkinson* relied on specific portions of the criminal code, A.R.S. §§ 13–603(C), 13–105(14), and 13–804(B), in concluding that the victims were entitled to restitution. *Id.* at 28–29, ¶¶ 6–7, 39 P.3d at 1132–33. Those statutes require compensation to the victims for *"the full amount of the economic loss,"* "as a result of the commission of an offense," but excluding *"consequential damages." See id.* (Emphasis in original.) The issues in *Wilkinson* were whether the statutes authorized restitution and whether the city court had correctly determined which of the victims' claimed losses were "direct" rather than "consequential" losses. *See id.* The court did not even mention A.R.S. § 32–1153 in analyzing whether the victims were entitled to restitution.

¶ 23 Our supreme court has held that the purpose of A.R.S. § 32–1153 is not to penalize contractors, but "to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Aesthetic Prop. Maint. v. Capitol Indemnity,* 183 Ariz. 74, 77, 900 P.2d 1210, 1213 (1995). To promote this purpose, the supreme court has allowed contractors to show that they have substantially complied with the licensing statutes before § 32–1153 is triggered. Thus, even unlicensed contractors are not automatically barred from bringing an action for amounts due. Similarly, we do not believe the purpose of § 32–1153 is furthered by requiring contractors to automatically pay restitution simply because they are unlicensed.

¶ 24 Contrary to the Bentivegnas' assertions, allowing unlicensed contractors to keep sums they have been paid, while prohibiting them from suing to collect sums they have not been paid, will not undermine the protective function of the statute. If a customer is dissatisfied, he is less likely to pay the full contract price. Preventing the unlicensed contractor from suing, therefore, helps protect the public from lawsuits by unlicensed persons who perform substandard work. It also encourages those who would act as contractors to obtain a license so that they can sue to collect money from nonpaying clients.

588

On the other hand, if an unlicensed person performs work and is paid for it, the customer then has a choice: if he is happy with the work done, he may allow the unlicensed contractor to keep the funds; if he is unhappy with the work done, he may pursue his legal remedies by suing for damages. In short, the Bentivegnas have an adequate remedy for Powers' allegedly substandard performance without torturing the plain language of § 32–1153 to create a new remedy. They can, and did, file a suit for breach of contract, breach of warranty, and negligence. We decline to interpret § 32–1153 to provide an additional "automatic restitution" remedy.

¶ 25 We affirm the trial court's denial of the Bentivegnas' motion for summary judgment concluding they are not entitled to restitution pursuant to A.R.S. § 32–1153.

## D. Costs and Attorneys' Fees

### 1. Trial Court

¶ 26 The Bentivegnas request that we reverse the trial court's award of attorneys' fees to Powers. Because we have reversed the judgment in favor of Powers on the breach of contract and breach of warranty claims and remanded for further proceedings, Powers is no longer the "prevailing party" within the meaning of A.R.S. § 12–341.01(A). We therefore reverse the trial court's award of attorneys' fees in favor of Powers pending final resolution of all of the issues raised in the case.

 ¶ 27 The Bentivegnas also contend that Powers is not entitled to an award of fees as the prevailing party in an action arising out of a contract because the contract is "void." They contend that, because A.R.S. § 32–1153 precludes an unlicensed contractor from suing for payment, he also should not be allowed to collect attorneys' fees in an action brought by the customer. Because this issue may arise on remand, we address it here.

¶ 28 The Bentivegnas sued Powers alleging, among other causes of action, a claim for breach of contract. They are thus seeking to enforce their contract with Powers. We see

no reason to hold that, because Powers could not have sued the Bentivegnas to enforce the same contract, it should not be allowed to collect attorneys' fees if it successfully defends the breach of contract action brought against it. Clearly, at least one claim in this action "arises out of contract." At the conclusion of the litigation, the trial court may consider whether an award of fees is appropriate.

### 2. On Appeal

¶ 29 The Bentivegnas also seek an award of fees on appeal pursuant to A.R.S. § 12–341.01. The Bentivegnas did not prevail on their argument that they are entitled to restitution pursuant to A.R.S. § 32–1153, but prevailed on their argument that none of their claims were barred by the exhaustion of remedies doctrine, and they have succeeded in obtaining a remand for further proceedings. Overall, we consider them to be the prevailing party on appeal and entitled to an award of costs. We decline to award attorneys' fees on appeal, however, because the litigation is not yet resolved. At the conclusion of the litigation, the trial court may consider whether, and to what extent, either party is entitled to an award of fees, including fees for this appeal.

## CONCLUSION

¶ 30 For the foregoing reasons, we affirm the judgment in favor of Powers on the Bentivegnas' claim for restitution pursuant to A.R.S. § 32–1153. We reverse the trial court's judgment on the breach of contract and breach of warranty claims and remand for further proceedings consistent with this decision. We award the Bentivegnas' costs on appeal, but deny their request for an award of attorneys' fees.

CONCURRING: SUSAN A. EHRLICH and DAVID R. COLE, Judges.*

* The Honorable David R. Cole, Maricopa County Superior Court Judge, was authorized to partici-