53 P.3d 1139

BETTER HOMES CONSTRUCTION, INC., Plaintiff–Appellant,

v.

Michael GOLDWATER, Director of Registrar of Contractors; and Ambassador Plumbing, Inc., an Arizona corporation, Defendants–Appellees.

No. 1 CA–CV 01–0594.

Court of Appeals of Arizona, Division 1, Department B.

July 9, 2002.

Redesignated as Opinion and Publication Ordered Sept. 19, 2002.

Jackson, White, Gardner, Weech & Walker, P.C., by James L. Tanner, Mesa, Attorneys for Plaintiff–Appellant.

Janet Napolitano, Attorney General, by Victoria Martin, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee Arizona Registrar of Contractors.

Martin, Hart & Fullerton, by James R. Hart, II, Mesa, Attorneys for Defendant–Appellee Ambassador Plumbing, Inc.

1. Better Homes acted under License No. 111628,

## OPINION

NOYES, Judge.

¶ 1 Better Homes Construction, Inc. ("Better Homes") appeals from the superior court's order affirming the Registrar of Contractors' ("Registrar's") revocation of Better Homes' contracting license. For the reasons discussed, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Better Homes was the general contractor for the construction of several homes.[1] Better Homes hired Ambassador Plumbing, Inc. ("Ambassador") to perform plumbing services at eleven sites on the construction project.

¶ 3 Ambassador filed a complaint with the Registrar, alleging that Better Homes had failed to pay it for work done on the project. Better Homes also filed a complaint with the Registrar, asserting that Ambassador had abandoned the project, forcing Better Homes to hire new plumbers to complete the project at costs exceeding Ambassador's bid. Better Homes alleged that all amounts owed Ambassador had been paid, and after all applicable offsets, Ambassador owed Better Homes approximately $12,000. The two cases were eventually consolidated.

¶ 4 The matter was first set for a hearing before the Office of Administrative Hearings for the Registrar in September 1999, but Better Homes failed to appear. The Administrative Law Judge ("ALJ") found that Better Homes owed Ambassador $22,601.49 for the work performed and that its bond amount was insufficient under the applicable statute given the value of the construction project. He further found that Better Homes' secretary, C.R. Freeman, aka Charles R. Freeman, was listed as the qualifying party on a contractor's license in the State of New Mexico (for Diamond Builders, Inc. ("Diamond")) and that New Mexico had revoked that license in June 1997. The ALJ concluded that Better Homes had violated various provisions of Arizona Revised Stat-

Class B.

utes ("A.R.S.") section 32–1154 (2002),[2] the statute setting forth grounds for suspension or revocation of a contractor's license, and recommended suspension of Better Homes' license until it increased its bond and paid Ambassador's damages. The Registrar entered a default order against Better Homes, adopting the ALJ's recommended order with the modification that Better Homes' license be revoked until Better Homes provided written proof that it had paid Ambassador's damages and removed Charles R. Freeman as a person named on its license.

¶ 5 Better Homes moved for a rehearing, arguing that its failure to appear was due to excusable neglect. The Registrar granted the motion, and a new hearing was held on November 6 and 7, 2000, and January 8, 2001.

¶ 6 The ALJ then entered a recommended decision, which found in favor of Ambassador on Better Homes' complaint and dismissed that complaint. The ALJ found that Ambassador had not abandoned any of its contracts with Better Homes and, therefore, that Better Homes was not entitled to offsets for payments made to other plumbers. The ALJ further found that Better Homes had failed to pay Ambassador for work done in the amount of $21,205.34. The ALJ also noted that although Charles Freeman had resigned as an officer (secretary) of Better Homes since the time of the first hearing, Tammy Freeman remained on Better Homes' license as the qualifying party, and she had also been a director of Diamond. The ALJ further noted that New Mexico revoked Diamond's license pursuant to a complaint of poor workmanship. The ALJ concluded that these acts constituted various violations of A.R.S. § 32–1154. He recommended suspension of Better Homes' license until it paid Ambassador the above sum and replaced Tammy Freeman as the qualifying party for its license.

¶ 7 The Registrar adopted the ALJ's findings of fact and conclusions of law but rejected the recommended order in that he decided to revoke Better Homes' license, not merely suspend it. He held that revocation was

appropriate in light of the violation of A.R.S. § 32–1154(A)(21) in that a person named on Better Homes' license (Tammy Freeman) was named on a license revoked in New Mexico in a case involving workmanship violations.

¶ 8 Better Homes filed a complaint for judicial review of the Registrar's decision in Maricopa County Superior Court. Following briefing and oral argument by Better Homes, Ambassador, and the Registrar, the trial court affirmed the Registrar's decision. The court entered judgment to that effect, and Better Homes filed this appeal. We have jurisdiction over this case pursuant to A.R.S. § 12–2101(B) (1994).

## ISSUES

1. Do the principles of res judicata or collateral estoppel apply to this case as a result of the Registrar's final decision in the "Miller case" or as a result of the Registrar's interim decision in this case?

2. Did the superior court err in determining that the Registrar properly held that Better Homes violated A.R.S. § 32–1154(A)(21)?

3. Is the Registrar's order ambiguous?

## DISCUSSION

*I. The Principles of Res Judicata and Collateral Estoppel Do Not Bar the Registrar's Final Decision in This Case.*

¶ 9 The Registrar revoked Better Homes' license because Tammy Freeman, the qualifying party on its Arizona license, had been a director of Diamond and, therefore, was a person named on Diamond's revoked New Mexico license. The Registrar concluded that this arrangement violated A.R.S. § 32–1154(A)(21), which states that it is a violation of the licensing statute to "[h]av[e] a person named on the license who is named on any other license in this state or in another state which is under suspension or revocation unless the prior revocation was based solely on a violation of this paragraph." Better

---

**2.** We cite the current version of § 32–1154 and other statutes because the applicable portions are   the same now as they were at times relevant to this appeal.

Homes contends that this revocation decision was barred by the doctrine of res judicata, or the doctrine of collateral estoppel, because the New Mexico license revocation had already been adjudicated in both the "Miller case"—another case before the Registrar in which Dana and Julie Miller, homeowners, filed a complaint against Better Homes based on poor workmanship—and. in the Registrar's interim decision issued after the first hearing in this case. We disagree on both counts.

¶ 10 Res judicata is a question of law that this court reviews de novo. *Phoenix Newspapers, Inc. v. Dep't of Corrs.*, 188 Ariz. 237, 240, 934 P.2d 801, 804 (App.1997). "*Res judicata* generally applies to valid and final adjudicative determinations by administrative tribunals." *Pima County Assessor v. Ariz. State Bd. of Equalization*, 195 Ariz. 329, 335, ¶ 21, 987 P.2d 815, 821 (App.1999). In order for res judicata or collateral estoppel to apply, there must be a *final* decision. *Ariz. Downs v. Superior Court*, 128 Ariz. 73, 76, 623 P.2d 1229, 1232 (1981); *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal.4th 763, 72 Cal.Rptr.2d 624, 952 P.2d 641, 661 (1998) (stating that the doctrine of collateral estoppel "prevents an administrative agency from reconsidering, in the absence of new facts, its prior final decision made in a ... quasi-judicial capacity").

¶ 11 Better Homes' contention that the revocation decision is barred by the decision issued after the first hearing in this case lacks merit. That interim decision never became a *final* decision because the Registrar granted Better Homes' request for a rehearing and issued a subsequent decision after the rehearing. In pertinent part, A.R.S. § 12–901(2) (Supp.2001) provides:

> In all cases in which a statute or rule of the administrative agency requires or permits an application for a rehearing or other method of administrative review, and an application for a rehearing or review is made, no administrative decision of such agency is final as to the party applying for the rehearing or review until the rehearing or review is denied or the decision on rehearing or review is rendered.

Because Better Homes requested a rehearing after the initial decision, the first decision never became a final administrative decision. Rather, the decision upon rehearing, the one that revoked Better Homes' license, became the *only* final decision. *Id.; see also Am. Smelting & Ref. Co. v. Ariz. Air Pollution Control Hearing Bd.*, 113 Ariz. 243, 244, 550 P.2d 621, 622 (1976) (stating that where a decision of an agency or other inferior tribunal is judicial in nature, an appeal ousts the inferior tribunal of jurisdiction to proceed further); *Quatraro v. Vill. of Kenmore Zoning Bd. of Appeals*, 277 A.D.2d 1001, 716 N.Y.S.2d 508, 509 (2000) (concluding that the zoning board of appeals was not bound by its initial decision where a rehearing had been granted because the original determination and the determination upon rehearing arose from the same proceeding; thus, the principles of res judicata, collateral estoppel, and the law of the case did not apply).

¶ 12 Better Homes also contends that the Registrar's revocation decision was barred by a prior decision in the Miller case. The New Mexico license revocation and any related violation of A.R.S. § 32–1154(A)(21) were not at issue in the Miller matter. The only mention of the New Mexico license revocation in the Miller case was made in one of seventy-six factual findings made by the ALJ, and it merely pertained to the ALJ's discounting of C.R. Freeman's testimony that he had not had prior problems with poor workmanship complaints. The ALJ found C.R. Freeman's testimony not credible because it was "contrary to reasonable inferences to be made from records of the New Mexico Regulatory Commission documenting revocation of [Diamond's] license on June 24, 1997." No violation of A.R.S. § 32–1154(A)(21) was alleged in the Miller case, and the ALJ never addressed that issue.

¶ 13 Res judicata bars a later suit based on the same cause of action and will preclude a claim when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties or their privies was, or might have been, determined in the former action. *See Gilbert v. Bd. of Med. Exam'rs*, 155 Ariz. 169, 174, 745 P.2d 617,

622 (App.1987), *superseded on other grounds by statute as stated in Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, 508 n. 7, ¶ 25, 990 P.2d 1061, 1067 n. 7 (App.1999). Res judicata does not apply because the Miller case did not address a possible violation of § 32–1154(A)(21).

■ ¶ 14 Similarly, collateral estoppel is inapplicable. The doctrine of collateral· estoppel "bars a party from relitigating an issue identical to one he has previously litigated to a determination on the merits in another action." *Id.* The § 32–1154(A)(21) violation issue was not litigated at all in the Miller case, and it was not litigated to a valid and *final* decision on the merits in this case at the time of the interim order. Thus, the Registrar was free to address the statutory violation in his final decision in this case.

II. *The Superior Court Did Not Err in Determining That the Registrar Properly Held That Better Homes Violated A.R.S. § 32–1154(A)(21).*

■ ¶ 15 Better Homes asserts that the Registrar improperly concluded that it had violated A.R.S. § 32–1154(A)(21) because Tammy Freeman was not a "person named" on the revoked New Mexico license. Better Homes interprets the "person named" language to solely apply to the "qualifying party" on a license. Although Tammy Freeman was a director of the New Mexico company, she was not the qualifying party listed on its license—that was C.R. Freeman. Questions of statutory interpretation are legal issues we review de novo. *Open Primary Elections Now v. Bayless*, 193 Ariz. 43, 46, ¶ 9, 969 P.2d 649, 652 (1998). However, "[w]e accord great weight to an agency's interpretation of a statute." *Phoenix Newspapers, Inc. v. Ariz. Dep't of Econ. Sec.*, 186 Ariz. 446, 448, 924 P.2d 450, 452 (App.1996).

■ ¶ 16 Better Homes incorrectly asserts that A.R.S. § 32–1154(A)(21) applies solely to the qualifying party. That statute provides:

    **A.** The holder of a license or any person listed on a license pursuant to this chapter shall not commit any of the following acts or omissions:

    . . . .

    21. Having a person named on the license who is named on any other license in this state or in another state which is under suspension or revocation unless the prior revocation was based solely on a violation of this paragraph.

A.R.S. § 32–1154(A)(21). The statute setting forth definitions for the contracting statutes defines a "person" as ·

    an applicant, an individual, a member of a limited liability company, a qualifying party, any partner of a partnership or limited liability partnership or any officer, director, qualifying party, trustee of a trust, beneficiary of a trust or owner of at least twenty-five per cent of the stock or beneficial interest of a corporation.

A.R.S. § 32–1101(A)(5) (2002).

¶ 17 This definition of a "person" expressly includes the officers and directors of a corporation. Tammy Freeman was an incorporator and a director of Diamond, and she is named as an incorporator and director on documentation pertaining to Diamond's revoked license filed with the New Mexico Public Regulation Commission. She was also the named qualifying party and President on Better Homes' Arizona license application.

■ ¶ 18 Better Homes' interpretation of A.R.S. § 32–1154(A)(21) as only applying to the "qualifying party named" on the license is too narrow and contradicts the plain language of the statute, which applies to any "person named on the license," as well as the statutory definition of "person," which expressly includes officers and directors.[3] *See Wells Fargo Credit Corp. v. Tolliver*, 183

---

**3.** Although the qualifying party and the business owners are named on the license application, they are not listed on the issued certificate; only the company is named on the license. Not allowing the Registrar to consider all persons named on the license application in determining violations of A.R.S. § 32–1154(A)(21) would defeat the purpose behind the statute and render it virtually meaningless. "Statutes must be given a sensible construction that accomplishes the legislative intent and which avoids absurd results." *Ariz. Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 233, 928 P.2d 653, 657 (App. 1996).

Ariz. 343, 345, 903 P.2d 1101, 1103 (App.1995) ("In interpreting a statute, [courts] look primarily to the language of the statute and give effect to the statutory terms according to their ordinary meanings unless the legislature has provided a specific definition . . . ."); *see also Walker v. City of Scottsdale,* 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App.1989) (stating that the language of a statute is the most reliable indicator of its intent, and when a statute expressly defines certain words, a court is bound by the legislative definition in all cases where the rights of litigants are based upon the statute).

¶ 19 We further note that we should liberally construe a statute whose purpose is the protection of the public in order to achieve its objective. *State v. Sanner Contracting Co.,* 109 Ariz. 522, 524, 514 P.2d 443, 445 (1973). The purpose of licensing contractors "is to regulate the conduct of contracting and protect the public from unscrupulous acts." *Beazer Homes Ariz., Inc. v. Goldwater,* 196 Ariz. 98, 101, ¶ 14, 993 P.2d 1062, 1065 (App.1999). Section 32–1154(A)(21) appears geared toward preventing persons from license-hopping within Arizona or from state-to-state—preventing one whose license has been suspended or revoked from simply abandoning that license and starting a new company with a new license. In light of the language of the relevant statutes and the public protection purpose of the statute, we conclude that the Registrar properly interpreted A.R.S. § 32–1154(A)(21) to apply not only to the qualifying party, but to all persons named on the license or license application. Such an interpretation better enables the Registrar to discipline licensees for license-hopping violations and to protect the public from unscrupulous individuals in the contracting business.[4]

### III. The Registrar's Decision Is Not Ambiguous.

¶ 20 Better Homes asserts that the Registrar's use of the word "order" in the singular creates an ambiguity because one cannot discern whether the Registrar rejected only the ALJ's recommended order regarding the suspension of Better Homes' license as to the Tammy Freeman issue in favor of revocation, leaving the ALJ's three remaining recommended orders in place, or whether the Registrar rejected all four recommended orders and ordered revocation as the sole order in effect. We find no ambiguity in the revocation order.

¶ 21 The Registrar's order adopted all of the ALJ's findings of fact and conclusions of law, as well as the ALJ's recommended dismissal of Better Homes' complaint against Ambassador. However, the Registrar expressly rejected the recommended order concerning the Ambassador complaint against Better Homes and concluded that revocation for the A.R.S. § 32–1154(A)(21) violation was a more appropriate discipline than suspension pending payment to Ambassador and removal of Tammy Freeman from its license.[5]

¶ 22 Better Homes' own brief makes it clear that Better Homes understands the meaning of the Registrar's order. In its brief, Better Homes recognizes that the ALJ's recommended order would have allowed it to maintain its license via payment of Ambassador's damages and removal of Tammy Freeman from the license, but that the Registrar ordered an unconditional revocation of its license. Accordingly, Better Homes' ambiguity argument is somewhat disingenuous.[6]

---

**4.** Better Homes also mentions in passing that the § 32–1154(A)(21) issue was not presented in the administrative hearings below, thereby raising due process and equal protection concerns. The pre—and post-hearing briefs of Better Homes and Ambassador, as well as the transcript of the hearing, belie this assertion.

**5.** Better Homes expands this argument in its reply brief, asserting that a subsequent superior court proceeding found the order ambiguous as to the relief provided Ambassador. However, any ambiguity regarding the damages to Ambas-

sador does not impact the clarity of the revocation order.

**6.** Better Homes initially challenged the Registrar's determination that Better Homes had breached its contract with Ambassador, as well as the Registrar's calculation of Ambassador's damages. However, in its reply brief, Better Homes indicates that these claims are now moot because it has reached a settlement with Ambassador. Therefore, we need not address this issue.

## CONCLUSION

¶ 23 The Registrar's decision finding a violation of A.R.S. § 32–1154(A)(21) was not barred by res judicata or collateral estoppel. The Registrar properly interpreted the statute and found that Better Homes had violated the statute. Furthermore, there is no ambiguity in the order of revocation. We affirm the superior court's decision affirming the decision of the Registrar.

CONCURRING: JON W. THOMPSON, Presiding Judge, and JOHN C. GEMMILL, JR., Judge.