NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TP RACING, L.L.L.P., an Arizona limited liability limited partnership;
*Plaintiff/ Appellee*,

*v.*

RONALD A. SIMMS;
*Defendant/Appellant.*

RONALD A. SIMMS, a married man dealing with his sole and separate property; RONALD A. SIMMS AS TRUSTEE OF RONALD A. SIMMS PERPETUAL ASSET SHIELD TRUST; RONALD A. SIMMS AS TRUSTEE OF RAS TRUST; and RASCD INC., a California corporation;
*Counter-Claimants/Appellants.*

*v.*

JEREMY ELLIS SIMMS and SERENA SIMMS, husband and wife; J&R RACING, LLC, an Arizona corporation; and TP RACING, L.L.L.P.;
*Counter-Defendants/Appellees.*

No. 1 CA-CV 14-0348
FILED 2-4-2016

Appeal from the Superior Court in Maricopa County
No.  CV2010-022308, CV2010-022311 (Consolidated)
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Greenberg Traurig, LLP, Phoenix
By E. Jeffrey Walsh, Nicole M. Goodwin
*Co-Counsel for Appellants*

Orrick, Herrington & Sutcliffe, LLP, Los Angeles
By Marshall B. Grossman, Stacy W. Harrison
*Co-Counsel for Appellants*

Stinson Leonard Street, LLP, Phoenix
By Michael C. Manning, James M. Torre, Stefan Palys
*Counsel for Appellees TP Racing, LLLP, Jeremy Ellis Simms, Serena Simms and J. Simms Enterprises, LLC*

Graif Barrett & Matura, PC, Phoenix
By E. Scott Dosek
*Counsel for Appellee J&R Racing, LLC*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge Kent E. Cattani joined.[1]

---

**S W A N N**, Judge:

¶1 We are asked to consider whether the superior court abused its discretion by dissolving preliminary injunctions that had protected the authority and interest of a limited partner in a partnership engaged in horse racing, a state-regulated activity. We hold that the court did not abuse its discretion. After the injunction issued, the pertinent regulatory agency determined that the partner's license had lapsed, that he was

---

[1] This is an appeal from an order dissolving preliminary injunctions in a multi-party litigation. Our caption above, which should be used in all future filings in this matter, identifies only the parties that appeared in this appeal.

ineligible for a new license, that he could not continue to participate in the partnership, and that his continued participation threatened the partnership's pending permit-renewal application. The court properly refrained from deciding the merits of the agency's determinations in view of administrative and declaratory-judgment proceedings on those issues pending elsewhere, and properly reweighed the equities to reflect the shift in the parties' relative hardships.

## FACTS AND PROCEDURAL HISTORY

¶2 This appeal arises from a long-standing dispute between two brothers, Jerry Simms and Ron Simms, regarding their respective interests in a horse-racing facility owned and operated by TP Racing, LLLP. At the times relevant to this appeal, TP Racing had several limited partners, including Jerry (55% ownership), Ron (18% ownership), and one or more trusts for which Ron is trustee (14% ownership) (referred to herein, collectively and individually, as "the Trusts"). TP Racing's sole general partner, responsible for its management, was J&R Racing, LLC (0.9% ownership). J&R Racing is owned in equal parts by Jerry and RASCD, Inc., a corporation for which Ron is the sole officer and shareholder. Jerry is J&R Racing's manager and has authority to make its day-to-day business decisions, but RASCD's consent is required for all other decisions.

¶3 In 2010, TP Racing commenced two actions (later consolidated) against Ron and a company owned by Ron. In response, Ron, RASCD, and the Trusts asserted claims against Jerry related to his management of TP Racing in his role as J&R Racing's manager. During the course of the litigation, Ron and RASCD obtained two preliminary injunctions. First, the court entered an injunction -- clarified after remand in *Simms v. Simms*, 1 CA-CV 11-0525, 2012 WL 2795978 (Ariz. App. July 3, 2012) (mem.decision) -- that prevented Jerry from exceeding his managerial authority under J&R Racing's operating agreement. Second, after Jerry claimed without lawful justification to have been substituted for J&R Racing as TP Racing's general partner, the court entered an injunction -- affirmed in *TP Racing, L.L.L.P. v. Simms*, 232 Ariz. 489 (App. 2013) -- that prevented Jerry and TP Racing from engaging in future removal processes.

¶4 Meanwhile, TP Racing applied to the Arizona Department of Racing ("ADOR" or "the Department") for renewal of its racing permit. In connection with that matter, TP Racing provided the Department with information that it claimed would justify revocation of Ron's racing

license. Soon thereafter, by letter dated November 18, 2013, the Department's Director informed TP Racing that the Department had discovered Ron did not hold a current license. The Director stated "As such Ronald Simms may not take part in, directly or indirectly, or have any personal interest in the operation of TP Racing LLLP."

¶5 Jerry and TP Racing immediately moved the court to dissolve or suspend the preliminary injunctions, arguing that Ron's lack of licensure made compliance with the injunctions unlawful and impossible. Ron and his entities opposed the motion, and Ron applied to the Department for a new license. By letter dated November 27, the Director informed the parties that it had received Ron's application. The Director further stated that his intent in the November 18 letter "was to prevent [Ron] from being involved in any day-to-day decisions that could impact the operation of [TP Racing's] current race meeting," and he "did not mean to imply that the race meeting should be halted because of this issue."

¶6 On December 6, the Director denied Ron's license application. The notice of denial included the following statement:

> Because Ronald Simms's application for a racing license is denied and he does not currently have a racing license, Arizona law prohibits Ronald Simms from being a limited partner in TP Racing, or acting in any capacity or in any way with respect to TP Racing, whether individually or through any entity. (A.R.S. §§ 5-107.01, -108.03, and A.A.C. R19-2-106(A)). This prohibition applies to Ronald Simms personally as well as to any trust for which Ronald Simms acts as trustee, and to any corporation, such as RASCD, Inc., in which Ronald Simms is an officer, director, or substantial stockholder.

The Director repeated this statement in a contemporaneous letter to the parties, and added:

> [I]t is critical that Ronald Simms's participation in TP Racing, in any capacity, be addressed prior to the consideration of TP Racing's application for renewal of its three-year permit.

The Director further stated that his previous correspondence "was written to assure everyone that the intent of the Arizona Department of Racing (ADOR) was not to imperil the ongoing Turf Paradise meeting," and that

4

the letter did not "imply that Ronald Simms really did not require an ADOR license to participate in racing in Arizona."

**¶7**　　　　On December 31, Ron filed a superior court special action against the Director and the Department, seeking a declaration that he was not required to be licensed to hold his interest in TP Racing or continue his participation in the partnership, and that even if he were required to be licensed, the defendants had exceeded their authority by forcing him to forfeit his interest. Ron also initiated an administrative appeal from the denial of his license application.

**¶8**　　　　On January 8, the Director informed the Department's Commission of the lapse and denial of Ron's license, and of the Director's statement to the parties that Ron could not participate in TP Racing's decisions. In a separate report dated the same day, the Director recommended that TP Racing's permit renewal application be granted.

**¶9**　　　　Later that month, on January 22, the court held oral argument on Jerry and TP Racing's motion to dissolve or suspend the preliminary injunctions. By order filed January 28, the court granted the motion. The court held:

> Ron disputes that he needs a racing license to enforce contract rights that do not involve his participation in racing meetings. *See* A.R.S. §§ 5-101(20), (23). The Court agrees with TP Racing that Ron paints the Preliminary Injunctions with too fine a brush. The purpose of the first Preliminary Injunction (entered July 13, 2011; modified on remand February 20, 2013) was to enforce § 5.1 of the J&R Racing ("J&R Racing") Operating Agreement. The purpose of the second Preliminary Injunction (entered February 15, 2012) was to enforce the contractual right of Ron, through RASCD, Inc. ("RASCD") to participate in decisions affecting TP Racing. To this end, Ron argues the Director (i) wrongfully concluded that Ron participates in racing meetings such that he is required to be licensed, *see* A.R.S. § 5-107.01(B), and (ii) lacked authority to divest Ron of ownership interests related to TP Racing. *See Ariz. Downs v. Turf Paradise, Inc.*, 140 Ariz. 438, 444 (App. 1984). Ron also argues the Director was incorrect in determining that Ron's racing license expired in June 2012. The Court finds that these issues, i.e., Ron v. ADOR, are more appropriately adjudicated in other forums. The dispute in this forum involves Ron v. TP Racing. The

Court must accord great weight to the Director's interpretation of statutes and ADOR regulations, regardless that Ron's economic or contract rights might be adversely impacted. To do otherwise would effectively stay the Director's determinations while Ron seeks relief elsewhere; clearly this would put TP Racing between the proverbial rock and hard place, particularly in the face of the Director's mandate that TP Racing address Ron's participation in TP Racing prior to consideration of its permit renewal application.

(Footnotes omitted.) In connection with its finding that "Ron v. ADOR" issues should be adjudicated in other forums, the court noted the existence of both the administrative appeal and the declaratory judgment special action, which remained pending before a different division of the court.

¶10 Immediately upon receiving the January 28 ruling, a majority of TP Racing's partners voted to dissociate Ron, the Trusts, RASCD, J&R Racing, and all other entities affiliated with Ron, for the stated purpose of "end[ing] Ron's illegal participation in TP Racing, and to continue the business of TP Racing without Ron." Jerry promptly sent letters to Ron and to the Director informing them of the dissociation. Jerry further informed the Director that TP Racing had a new general partner, which was a company owned and operated by him. The Director transmitted Jerry's correspondence to the Commission, attaching it to a memorandum dated February 18. On February 18, the Commission held a hearing on TP Racing's permit-renewal application and voted to grant it.

¶11 On March 4, Ron and his affiliates moved the court to reconsider its ruling dissolving the injunctions, or, alternatively, to stay the effect of the ruling pending an appeal. Ron argued that newly disclosed evidenced showed that Jerry had improperly influenced the Director, and that the Department had since acted in a manner inconsistent with the Director's determinations. The court held oral argument on Ron and RASCD's motion on April 2, and denied it on April 11. The court ruled that the Director's determination that Ron could not hold an interest or participate in TP Racing was "not . . . so far off-the-mark as to be inherently corrupt and undeserving of deference." The court further held that the Director's determination "has not been disavowed by either the Director or ADOR."

**¶12**      The court entered a signed order dissolving the injunctions on May 20.  Ron and his affiliates timely filed a notice of appeal, and unsuccessfully moved this court to stay the dissolution order.

**¶13**      A month after the appellants filed their notice of appeal in this matter, the superior court declined to exercise jurisdiction in the declaratory judgment special action.  A year later, after holding a series of hearings, the Office of Administrative Hearings ("OAH") recommended that the Director's denial of Ron's license application be reversed.  The OAH subsequently certified the decision as final (a classification that the appellees dispute), and the Department of Gaming's Racing Division (ADOR's successor under 2015 Ariz. Sess. Laws, ch. 19, § 10 (1st Reg. Sess.)) awarded Ron a conditional temporary license.[2]

### JURISDICTION AND STANDARD OF REVIEW

**¶14**      A.R.S. § 12-2101(A)(5)(b) provides that "[a]n appeal may be taken to the court of appeals from the superior court . . . [f]rom an order . . . dissolving an injunction."  The appellees contend, however, that the appeal is moot because the parties that were protected under the injunctions have been dissociated from the partnership.  In these circumstances, we disagree.  The dissociation was the direct result of the injunctions' dissolution.  The appellants sought to avoid dissociation by moving for a stay, first in the superior court and then in this court.  The denial of those procedural motions cannot serve as a substitute for appellate review on the merits, even if a reversal would create logistical challenges.

---

[2]      We take judicial notice of the OAH and agency records on the appellants' motion.  *See* Ariz. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Jarvis v. State Land Dep't*, 104 Ariz. 527, 530 ("This is an official act of a state agency, the records of which we take judicial notice."). We *sua sponte* take judicial notice of the filings in the declaratory judgment special action.  *See In re Sabino R.*, 198 Ariz. 424 (App. 2000) (holding that "[i]t is proper for a court to take judicial notice of its own records or those of another action tried in the same court," and an appellate court may "take judicial notice of anything of which the trial court could take notice, even if the trial court was never asked to take notice").

¶15        We review the court's decision to dissolve the injunctions for an abuse of discretion. *See Town of Tortolita v. Napolitano*, 199 Ariz. 556, 559-60, ¶ 10 (App. 2001). An injunction should be dissolved when "it appears that there is not sufficient grounds for the injunction," Ariz. R. Civ. P. 65(c), because of "changed circumstances or changes in the law," *Nu-Tred Tire Co. v. Dunlop Tire & Rubber Corp.*, 118 Ariz. 417, 420 (App. 1978).

## DISCUSSION

¶16        The appellants correctly assert that "[t]he facts that warranted issuance and affirmance of [the] preliminary injunctions" remained unchanged. But there was a new fact -- Ron's purported inability to participate in the business of TP Racing. The Director determined that Ron's racing license had expired, that he would not be granted a new license, and that his lack of license disqualified him and his entities from continued involvement in TP Racing. The Director also indicated that TP Racing's pending permit-renewal application would be adversely affected if Ron continued to participate in the partnership.

¶17        The appellants contend that the superior court inappropriately deferred to the Director's conclusions. But the court expressly declined to decide whether the Director's determinations were substantively correct, explaining that "these issues, i.e., Ron v. ADOR, are more properly adjudicated in other forums." The court's restraint was appropriate. Ron had initiated separate proceedings attacking the merits of the Director's decisions: consistent with A.R.S. § 5-104(D), he had taken an administrative appeal from the Director's denial of his license application; and, consistent with A.R.S. § 41-1034, he had filed a declaratory judgment special action regarding the Director's conclusion that he required a license to continue his participation in TP Racing. The Department was a party to those proceedings, which remained pending at all relevant times. The Department was not, however, joined in the action involving the injunctions. In view of the procedural posture of the various disputes, the court appropriately declined to decide the merits of Ron's claims against the Department.

¶18        The question before the court was not the validity of the Director's determinations and admonition, but their effect. The court was required to assess whether the Director's actions altered the legal

justification for the preliminary injunctions.[3] *See Nu-Tred*, 118 Ariz. at 420. Imposition of a preliminary injunction depends upon consideration of four traditional equitable criteria: the movant's likelihood of success on the merits, the movant's likelihood of irreparable harm if injunctive relief is not granted, the balance of hardships as between the parties, and public policy. *Shoen v. Shoen*, 167 Ariz. 58, 63 (App. 1990). Of these factors, relative hardship is the most important. *Id.* To obtain injunctive relief, the movant must show "either 1) probable success on the merits and the possibility of irreparable injury; or 2) the presence of serious questions and 'the balance of hardships tips sharply' in his favor." *Id.* (citation omitted).

¶19 Here, the Director's actions radically altered the balance of hardships that had originally justified the injunctions. The injunctions were fashioned to protect Ron from being deprived of his authority and interest in TP Racing. But the Director's determinations created a competing need to protect TP Racing from the loss of a permit essential to its operations. The Director's conclusion that Ron could no longer participate in TP Racing, and his warning that Ron's continued participation could affect TP Racing's permit, shifted the balance of hardships from Ron's favor to TP Racing's favor. The Director's actions created a compelling risk of harm to TP Racing: if TP Racing were not allowed to alter Ron's interest, its pending permit-renewal application would likely be denied. Such a denial, when finalized, would prevent TP

---

[3] Contrary to the appellants' contention, this analysis did not require the court to grant "expedited discovery" or set an evidentiary hearing. To be sure, "a party opposing a preliminary injunction must be given a reasonable opportunity to present oral testimony where there are disputed issues of material facts." *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 169 Ariz. 520, 526 (App. 1991). But this was not such a case. The facts relevant to the issue before the court were limited to those concerning the occurrence of the Director's decisions. The parties did not dispute the *fact* of the Director's actions. Further, Ron and RASCD were not deprived of the opportunity to conduct discovery concerning the circumstances surrounding the Director's decisions -- they in fact conducted discovery and presented the results to the court in their motion for reconsideration. And though they contend on appeal that "there were still outstanding discovery disputes" (apparently concerning drafts and other communications regarding the Director's denial of Ron's license application) at that time, they do not explain the eventual results of those discovery requests.

Racing from conducting its business. *See* A.R.S. § 5-107.01 ("A person, association or corporation shall not hold any racing meeting without having first obtained and having in full force and effect a permit that is issued by the department."); A.R.S. § 41-1092.11(A) (providing that when license-renewal application is denied, existing license continues until denial becomes final after review or expiration of time for seeking review). TP Racing therefore faced a significant threat of irreparable harm – a risk that also imperiled Ron's economic interests.

¶20　　　　The appellants contend that the Department's conduct showed in retrospect that the threat of harm was illusory. They note (as they did in their motion for reconsideration) that the Director, when recommending that the Commission grant TP Racing's permit-renewal application, cited a financial investigation report that considered Ron's personal financial position. They also note the Director's statement in his November 27 letter that Ron's lack of license would not impact TP Racing's race meeting. These arguments disregard material facts. In his December 6 letter, the Director expressly clarified that his previous correspondence was not meant to imply that Ron's lack of a license was without consequence. Moreover, at the time the Commission voted on TP Racing's application, it was well aware that Ron and his entities had been dissociated from the partnership -- not only had the Director provided the Commission with a copy of Jerry's correspondence describing the dissociation, but Jerry and TP Racing's counsel had provided copies of the documents effecting the dissociation. And at the hearing on TP Racing's application, the Commission specifically considered the impact of Ron's dissociation on TP Racing's financial viability and the old financial investigation report and declined Ron's request to condition permit approval on the assumption that he continued to hold an interest in the partnership. On this record, we find no support for the appellants' contention that TP Racing would have obtained a permit even if the injunctions had remained in place.

¶21　　　　Of course, the risk of harm that continuing the injunctions posed to TP Racing was only part of the inquiry -- the court also had to consider the risk of harm that dissolution of the injunctions would create for Ron. Accordingly, though the court was not in a position to *decide* the merits of the Director's determinations (as we have explained), it was required to gauge the probability of Ron's practical ability in the short term to continue to hold an interest in a viable TP Racing. Such predictive interlocutory analyses play a role in nearly every case in which the court is asked to determine whether a preliminary injunction should be imposed or maintained. "The trial court often must quickly make a decision

concerning the merits in the preliminary injunction phase of litigation, . . . and in doing so focuses primarily on balancing the four equitable criteria." *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 280 (App. 1993). This matter was atypical only in the sense that the court's predictive analysis was focused on proceedings pending in other forums.

**¶22** The court noted that it gave "great weight to the Director's interpretation of statutes and ADOR regulations," and that "the Director's determination [that Ron could not participate in TP Racing without a license was] not so far off-the-mark as to be inherently corrupt and undeserving of deference" even assuming that it was the product of improper influence. We conclude that the court analyzed the situation correctly based on the information available at the time. Though courts have final authority on issues of statutory construction, an agency's interpretation is entitled to considerable weight. *Better Homes Constr., Inc. v. Goldwater*, 203 Ariz. 295, 299, ¶ 15 (App. 2002).

**¶23** The court's decision to give weight to the Director's conclusion regarding the effect of Ron's failure to hold a license was proper because his legal interpretation was facially tenable. (It was also, as the court noted, consistent with previous administrative decisions and with statements attributable to Ron.) In holding that Ron and his entities could no longer participate in TP Racing, the Director relied on A.R.S. § 5-107.01, A.A.C. R19-2-106(A), and A.R.S. § 5-108.03. Section 5-107.01(B) sets forth a non-exhaustive list of a wide range of individuals -- from "manager[s]" to "groom[s]," and "jockey[s]" to "food and beverage concessionaire[s]" and "*any* other person or official the department deems proper" -- who must obtain a license before participating in racing meetings. (Emphasis added.) Regulation 19-2-106(A) provides that "[a] person who participates in *any* capacity in a race meet" must obtain a license, unless the person is a county-fair-meet volunteer or a less-than-10% stockholder of a permitee or licensee. (Emphasis added.) Finally, § 5-108.03(C) provides that "a person . . . shall be considered as itself holding or having any ownership interest held directly or indirectly by its affiliates." Like the superior court, we do not decide whether the Director's interpretation of these statutes and rule was correct. But in view of the authorities' breadth, the court acted well within its discretion when it found that dissolution of the injunctions was warranted. As the court recognized, whether the Director's interpretation was the product of undue influence was beyond the scope of its inquiry in these circumstances. Further, to the extent that the interpretation was claimed to be based upon improper licensing determinations, the court did not err in giving weight to the agency action in view of the Department's

considerable discretion to grant or deny license applications. *See* A.R.S. § 5-108(A)(1).

**¶24**       The appellants finally contend that the court failed to make express findings and conclusions as required under Ariz. R. Civ. P. 52(a). We disagree. The court enumerated the Director's determinations, acknowledged the pending administrative and declaratory judgment proceedings, reweighed the appropriate equitable considerations in view of the new facts, and explained its reasoning.

## CONCLUSION

**¶25**       For the foregoing reasons, we affirm the order dissolving the preliminary injunctions. We express no opinion as to whether the appellants may be entitled to relief based on events that occurred after entry of the dissolution order.

**¶26**       Some of the appellees request an award of attorney's fees and costs on appeal under A.R.S. §§ 12-341 and -341.01, and some also request fees under the TP Racing partnership agreement. Our review of the agreement (as provided in connection with the motion to dissolve the injunctions) reveals no contract provision authorizing a fee award, and in our discretion we decline to award fees under A.R.S. § 12-341.01. The appellees are entitled to an award of costs under A.R.S. § 12-341 upon their compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama